**In re Robert Michael BERTOLA, Debtor.**

**Robert Michael Bertola, Appellant,**

**v.**

**Northern Wisconsin Produce Company, Inc., Appellee.**

BAP No. AZ–04–1067–DPB.
Bankruptcy No. 01–08022–PHX–RJH.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 24, 2004.

Filed Oct. 22, 2004.

Gregory S. Fisher, Jaburg & Wilk, P.C., Scottsdale, AZ, for Robert Michael Bertola.

Daniel P. Collins, Leonard, Collins & Gillespie, P.C., Phoenix, AZ, for Northern Wisconsin Produce Company, Inc.

Before: DONOVAN,[1] PERRIS, and BRANDT, Bankruptcy Judges.

1. Hon. Thomas B. Donovan, Bankruptcy Judge for the Central District of California,

## OPINION

DONOVAN, Bankruptcy Judge.

Robert Michael Bertola appeals the bankruptcy court's judgment awarding $96,841 in attorneys' fees to Northern Wisconsin Produce Company, Inc. Northern Wisconsin incurred these fees in multiple actions related to the adversary proceeding below, in which the dischargeability of Bertola's debts was contested. Because the bankruptcy court used incorrect legal standards in the award of attorneys' fees, we REVERSE the judgment and REMAND with directions.

## FACTS

This case is about stolen cheese. In or around January 2001, Robert Michael Bertola and The Cheese Company removed 89,160 pounds of Northern Wisconsin's cheese to its competitor's warehouse while both Bertola and The Cheese Company were each in bankruptcy.

Bertola was the president, a shareholder, and the principal of The Cheese Company. The Cheese Company operated numerous coolers in Phoenix, Arizona, where it stored, shredded, bagged, labeled, transported and brokered cheese for sale. One of its principal clients was Northern Wisconsin, which had been engaged in business transactions with Bertola and the Cheese Company since April 1999. Northern Wisconsin shipped cheese products to The Cheese Company, which then processed and distributed them to Northern Wisconsin's local customers. Northern Wisconsin paid The Cheese Company fees based on the weight of cheese The Cheese Company processed.

The Cheese Company filed a voluntary chapter 11 [2] petition on June 1, 2000, in the bankruptcy court for the District of Arizona. Bertola, who had personally guaranteed much of The Cheese Company's debts, filed his own voluntary chapter 7 petition on June 19, 2001. Bertola was the person designated to act on behalf of The Cheese Company as debtor in possession.

Ionian Foods, LLC, was also in the cheese business. Bertola directed all of The Cheese Company's relationships with Ionian. Bertola purportedly was negotiating with Ionian to help revive The Cheese Company's business; however the true nature of the relationship soon revealed itself. By early January 2001, Ionian had effectively taken over the operations of The Cheese Company, was using The Cheese Company's fax and phone numbers, and had control of The Cheese Company's business. Around the same time, Bertola worked to create cheese package labels for Ionian that appeared deceptively similar to Northern Wisconsin's label. Finally, in January 2001, everything having been set in motion, The Cheese Company shredded and labeled 89,160 pounds of Northern Wisconsin's cheese with Ionian's label. Put simply, Bertola stole his client's cheese. Further, he knowingly participated in such out-of-the-ordinary-course transactions while serving on behalf of The Cheese Company as debtor in possession.

On October 1, 2001, Northern Wisconsin filed an adversary proceeding, objecting to the dischargeability of Bertola's debts. After trial, the bankruptcy court concluded that Bertola's debt to Northern Wisconsin was nondischargeable. The court specifically found that Bertola had engaged in a fraudulent scheme to transfer Northern Wisconsin's cheese to the benefit of Ionian and its principals. Bertola's contention that there was never any theft or conversion of the cheese was rejected, as was Bertola's contention that The Cheese Com-

---

sitting by designation.

2. Unless otherwise indicated, all chapter and section references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

pany sold some of the cheese to pay for overdue storage charges that Northern Wisconsin owed pursuant to the foreclosure of a warehouseman's lien. The court held this was a fraudulent story designed to cover up the theft and sale of the cheese to Ionian.

The court determined that Northern Wisconsin suffered damages in the amount of $305,702 for the loss of its cheese as a result of Bertola's false pretenses, false representations, and actual fraud. After supplemental briefing, the bankruptcy court further concluded that Northern Wisconsin was entitled to recover its attorneys' fees and costs in pursuing its claims under § 523(a)(2)(A) and § 523(a)(6) under applicable Arizona law: specifically that attorneys' fees were recoverable under § 523(a)(2)(A) via Arizona Revised Statutes (A.R.S.) § 12–341.01, and under § 523(a)(6) via the "tort of another" exception to the American Rule.[3]

Judgment was entered on December 1, 2003. Bertola timely appealed from the bankruptcy court's decision to award attorneys' fees.

## ISSUES

I. Whether the bankruptcy court erred in holding that attorneys' fees are generally recoverable under §§ 523(a)(2)(A) and (a)(6).

II. Whether the bankruptcy court erred in awarding attorneys' fees under Arizona Revised Statutes § 12–341.01.

III. Whether the bankruptcy court erred in awarding attorneys' fees under Arizona's version of the "tort of another" exception.

## STANDARD OF REVIEW

We review a bankruptcy court's determination on attorneys' fees for abuse of discretion or erroneous application of the law. *AT & T Universal Card Services, Corp. v. Pham (In re Pham)*, 250 B.R. 93, 96 (9th Cir. BAP 2000). The bankruptcy court's decision to award attorneys' fees under § 523 and under Arizona law is an issue of law that we review de novo. *Id.*

## DISCUSSION

## I. ATTORNEYS' FEES GENERALLY UNDER §§ 523(a)(2)(A) AND (a)(6)

In federal courts, attorneys' fees ordinarily are not recoverable by the prevailing party in an action except by contract or by statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This principle is known as the American Rule.

In addition to the American Rule, there is no general right to recover attorneys' fees under the Bankruptcy Code. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir.1997). Instead, whether fees may be awarded in bankruptcy proceedings generally depends, in part, on whether the case involves state or federal claims and whether the applicable law allows such fees. "[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Id.; see also Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1126–27 (9th Cir.1996).

In cases under § 523(a)(2), however, "the determinative question ... is

---

**3.** Although the bankruptcy court only provided justifications for an award of attorneys' fees under §§ 523(a)(2) and (a)(6), the court apparently allowed Northern Wisconsin to recover its attorneys' fees incurred in related third-party actions as well.

whether the successful plaintiff could recover attorney's fees in a non-bankruptcy court." *Pham*, 250 B.R. at 99. In *Pham*, we held that the general rule of *Baroff* and *Hashemi* no longer retains any vitality with respect to cases under this section in light of *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). *Cohen* held that a bankruptcy court could determine the "debt" in a proceeding under § 523(a)(2)(A) to include attorneys' fees and costs. *Id.* at 223, 118 S.Ct. 1212. Thus, if Northern Wisconsin could recover attorneys' fees in a non-bankruptcy court on its action under § 523(a)(2), these fees will be recoverable.

The same should be true in cases under § 523(a)(6). Given that *Cohen* read § 523(a)(2) in *pari materia* with (a)(6) and that the same logic that was applied to (a)(2) also applies to (a)(6), we find it persuasive that whether the successful plaintiff could recover attorneys' fees in a non-bankruptcy court is likewise the determinative question under § 523(a)(6).[4] *See Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 94 (9th Cir. BAP 2000), *aff'd*, 33 Fed. Appx. 365 (9th Cir.2002); *id.* at 95 (Brandt, J., concurring).

We therefore conclude that the bankruptcy court did not err in holding that attorneys' fees may be recoverable under §§ 523(a)(2)(A) and (a)(6) under *Cohen* and

*Pham.* Consequently, our analysis turns to whether Northern Wisconsin would be able to recover its attorneys' fees in a non-bankruptcy court.[5]

## II. ARIZONA REVISED STATUTES § 12–341.01

Bertola asserts that it was error to award attorneys' fees to Northern Wisconsin under A.R.S. § 12–341.01(A). We agree.

A.R.S. § 12–341.01(A) provides, in pertinent part, that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Thus, the fundamental question in this case is whether Northern Wisconsin's action against Bertola arose out of a contract. The bankruptcy court held that it did, relying on an implied bailment contract between Northern Wisconsin and The Cheese Company.[6] This was error.

The Arizona statute requires more than just the existence of a contract. *Marcus v. Fox*, 150 Ariz. 333, 335, 723 P.2d 682, 684 (1986) ("attorney's fees are not appropriate based on the mere existence of a contract somewhere in the [litigation]"). To the contrary, the contract must be a substantive predicate to an action. *Sparks*

---

4. Even if this were not the case, however, it is nonetheless clear that while federal law governs the dischargeability of debts, state law governs the validity of a creditor's underlying claim. *Roussos*, 251 B.R. at 92. Because bankruptcy courts refer to state law in the determination of whether the debtor's conduct was tortious, *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1206 n. 16 (9th Cir. 2001) (citing to *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir.1999)), attorneys' fees may nonetheless still be substantially recoverable under the general rule of *Baroff* and *Hashemi*.

5. Bertola essentially concedes this point in his Reply Brief by agreeing "that under [*Cohen* and *Pham*] fees could be awarded in Section 523 proceedings if they could be recovered in a non-bankruptcy court."

6. Case law makes clear that a cause of action may arise out of a contract even if one of the litigants was not a party to the contract. *Schwab Sales, Inc. v. GN Construction Co.*, 196 Ariz. 33, 37, 992 P.2d 1128, 1132 (App. 1998). Because of our determination that the attorneys' fee award under A.R.S. § 12–341.01(A) was improper, we decline to determine whether *Schwab* applies to the facts of this case.

*v. Republic Nat'l Life Ins.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982) (" § 12–341.01(A) [applies] as long as the cause of action in tort could not exist *but for* the breach of the contract") (emphasis in original); *see also Deutsche Credit Corp. v. Case Power & Equip. Corp.*, 179 Ariz. 155, 163, 876 P.2d 1190, 1198 (App.1994).

 Where a contract merely is a factual predicate to the action, but not the essential basis of it, recovery of damages under A.R.S. § 12–341.01(A) is improper. *Cashway Concrete & Materials v. Sanner Contracting Co.*, 158 Ariz. 81, 83, 761 P.2d 155, 157 (App.1988). "In analyzing this issue, the court should look to the fundamental nature of the action rather than the mere form of the pleadings. [Even so, t]he existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15, 6 P.3d 315, 320 (App. 2000).

In *Sparks,* the Arizona Supreme Court analyzed whether attorneys' fees could be awarded under A.R.S. § 12–341.01(A) for fees incurred in bad faith and misrepresentation causes of action. The court upheld the award of attorneys' fees in the bad faith cause of action, but reversed the award in the misrepresentation cause of action. The bad faith cause of action was one "arising out of a contract" because the "existence of the tort is so intrinsically related to the contract." 132 Ariz. at 544, 647 P.2d at 1142. The existence and breach of the contract were necessary to prove the substance of the bad faith claim. *Id.* The bad faith claim could not have been brought absent the breach of the contract. By contrast, the existence or breach of the contract was not required to prove the misrepresentation claim. *Id.*

Thus, the misrepresentation cause of action did not "aris[e] out of a contract."

 The instant litigation involves nondischargeability causes of action that are predicated on state law fraud and conversion actions. Even accepting the existence of the implied bailment contract, it is clear that this contract was not a substantive predicate to the fraud and conversion actions. Rather, these actions are akin to the misrepresentation action in *Sparks.* In short, the nondischargeability claims could have been brought independently of the existence of the contract. The contract between Northern Wisconsin and The Cheese Company was merely a factual predicate to the nondischargeability claim. Thus, an award of attorneys' fees appears facially improper.

Facing this uphill battle, it has been nonetheless suggested that Northern Wisconsin's successful opposition to Bertola's warehouseman's lien foreclosure defense serves as a basis for an award of attorneys' fees. The basic idea is that because Bertola's defense arises out of the implied bailment contract, the bankruptcy court's award of attorneys' fees for the entire nondischargeability action was proper.

 This argument is easily disposed of by *Benjamin v. Gear Roller Hockey Equipment,* 198 Ariz. 462, 11 P.3d 421 (App.2000). In *Benjamin* the court held that attorneys' fees could not be awarded under A.R.S. § 12–341.01(A) in a tort action even though a waiver and release of liability contract had been litigated as a defense to the tort action. *Id.* at 466, 11 P.3d at 425. Thus, the fact that a contract is litigated as a defense to an action is irrelevant to the question of whether the "contested action ar[ose] out of a contract." Other Arizona cases are in accord. *See, e.g., Sirek v. Fairfield Snowbowl, Inc.,* 166 Ariz. 183, 188, 800 P.2d 1291, 1296 (App.1990) (denying attorneys' fees be-

cause personal injury suit against company did not arise from the release). Assuming that attorneys' fees could not be recovered even if a contract were litigated as a defense, then, *a fortiori*, fees cannot be recovered when the defense is merely the existence of a warehouseman's lien.

Arizona case law makes clear that none of the causes of action in this case "aris[e] out of a contract." Accordingly, the award of attorneys' fees under A.R.S. § 12–341.01(A) must be reversed.

## III. THE "TORT OF ANOTHER" EXCEPTION

Bertola asserts that it was error to award attorneys' fees to Northern Wisconsin under Arizona's version of the "tort of another" exception to the American Rule. While we agree that the bankruptcy court misapplied the correct legal standard, we disagree that as a matter of law attorneys' fees could not be awarded in this case under the "tort of another" exception.

Under the American Rule, parties to a lawsuit generally are not entitled to recover their attorneys' fees unless fees are provided for by statute or contract. *See United States Fidelity & Guaranty Co. v. Frohmiller*, 71 Ariz. 377, 379, 227 P.2d 1007, 1008 (1951). The "tort of another" exception is an exception to this general rule.

 *Frohmiller* was the first case to discuss the "tort of another" exception in Arizona. *Frohmiller* described the exception as follows:

where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages. *Id.* at 380, 227 P.2d at 1009 (quoting 15 AM. JUR., Damages § 144); *see also* 22 AM. JUR. 2D Damages § 436 (2003); RESTATEMENT (SECOND) OF TORTS § 914(2) (1979); 45 A.L.R.2d 1183 (1956). Put simply, this exception generally applies to permit B to recover from A the fees incurred "when, because of the tort of A, B is required to bring or defend against an action involving C in order to protect its interests."[7] *Collins v. First Financial Services, Inc.*, 168 Ariz. 484, 490, 815 P.2d 411, 417 (App. 1991).

 Thus, the relevant questions for this case are whether the plaintiff became involved in a legal dispute with a third party because of the defendant's tortious conduct, and whether the fees expended on the third-party suit were foreseeable, necessary and reasonable. If so, then the plaintiff can recover the fees incurred in the third-party suit.

*Collins* provides an excellent example of how the "tort of another" exception applies. In that case, a buyer brought an action to quiet title against First Financial, a corporation that held a senior lien on a mobile home that the buyer had bought from Chrysler, a credit corporation that held an inferior lien. First Financial

---

7. Bertola plainly ignores this language in making his incorrect assertion that the exception only applies defensively. The Restatement makes clear that the exception applies to "[o]ne who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person." RESTATEMENT (SECOND) OF TORTS § 914(2). In the absence of Arizona law to the contrary, Arizona courts follow the law of the Restatement. *Jesik v. Maricopa County Community Coll. Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980). Naturally, it will be more difficult to show that it was necessary to bring an action than to defend one.

cross-claimed against Chrysler for conversion. The trial court found that the buyer held title to the property as a bona fide purchaser and held that Chrysler was liable to First Financial for conversion. The appellate court held that because First Financial's defense against the buyer's quiet title action was necessitated by Chrysler's conversion, First Financial was entitled to recover its reasonable attorneys' fees incurred in defending the quiet title action as a measure of conversion damages against Chrysler under the "tort of another" exception. 168 Ariz. at 485, 815 P.2d at 412. However, the attorneys' fees incurred in the conversion action against Chrysler were not recoverable. *Id.* at 486 & n. 2, 815 P.2d at 413 & n. 2.

■ In this case, the bankruptcy court erred in awarding attorneys' fees incurred in the nondischargeability action under the "tort of another" exception. Under this exception, attorneys' fees incurred in litigating with a defendant may not be awarded against that same defendant. *Spanier v. U.S. Fidelity & Guaranty Co.*, 127 Ariz. 589, 623 P.2d 19, 29 (App.1980). Just as First Financial could not recover its attorneys' fees in the conversion action against Chrysler in *Collins*, Northern Wisconsin cannot recover its attorneys' fees in the nondischargeability action against Bertola in this case. *See Collins*, 168 Ariz. at 486 & n. 2, 815 P.2d at 413 & n. 2; *see also Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 258, 603 P.2d 513, 529 (App.1979) (only attorneys' fees from prior third-party lawsuit recovered); *Wichita v. Pima County*, 131 Ariz. 576, 577, 643 P.2d 21, 22 (App.1982) (same). Awarding such fees was an erroneous application of the law and thus a reversible abuse of discretion.

The question then becomes what, if any, of the attorneys' fees that were awarded may be justified by the "tort of another"

exception. The bankruptcy court did find that "the wrongful acts of [Bertola] involved Northern Wisconsin in litigation with others and made it necessary to incur legal fees and costs to protect its interests." This, facially, would appear to fit squarely within the "tort of another" exception. If so, the attorneys' fees incurred against these third parties could be awarded to Northern Wisconsin as a measure of damages.

The record does not clearly disclose what the bankruptcy court meant by "litigation with others." Perhaps the reference is to actions brought by Northern Wisconsin against The Cheese Company and Ionian. If this was what the bankruptcy court meant, it is unclear whether the attorneys' fees were incurred in these third-party actions, and if so, how much. Furthermore, and perhaps more significantly, it is unclear what amount of attorneys' fees in these unnamed actions necessarily and reasonably were expended as a result of Bertola's conduct.

■ Thus, we must remand for a redetermination by the bankruptcy court of whether attorneys' fees should be awarded to Northern Wisconsin and, if so, the proper amount. On remand, however, the bankruptcy court should be mindful that attorneys' fees must be necessarily incurred. *Frohmiller*, 71 Ariz. at 380, 227 P.2d at 1009. *See* RESTATEMENT (SECOND) OF TORTS § 914, com. b (describing the exception as operating "[w]hen a cause of action or an alleged cause of action exists *only* because of a tort of another") (emphasis added); 45 A.L.R.2d 1183 (describing relationship between the defendant's tortious act and the third-party litigation as one of "natural and proximate consequence"). Following this general principle, we note without deciding that it is questionable whether attorneys' fees generally can be awarded under the "tort of

another" exception when they are incurred in actions against joint tortfeasors.[8]

## CONCLUSION

The bankruptcy court's award of attorneys' fees to Northern Wisconsin is reversed inasmuch as the award was granted under A.R.S. § 12–341.01.[9] The award is further reversed inasmuch as the award was granted under the "tort of another" exception for attorneys' fees not necessarily incurred against third parties. Finally, this case is remanded with directions to determine the proper amount of attorneys' fees to be awarded under the "tort of another" exception, if any.

---

8. Numerous cases have denied attorneys' fees under the "tort of another" exception in actions with joint tortfeasors. *See, e.g., Ashley v. Church (In re Ashley)*, 903 F.2d 599, 605 (9th Cir.1990); *Miller Hydro Group v. Popovitch*, 851 F.Supp. 7, 14–15 (D.Me.1994); *Beavers v. Kaiser*, 537 N.W.2d 653, 654, 658 (N.D.1995); *Golden West Baseball Co. v. Talley*, 232 Cal. App.3d 1294, 1302, 284 Cal.Rptr. 53, 58–59 (1991).

The reasoning is simple. Assuming Bertola and Ionian to be joint tortfeasors, "[i]f [Northern Wisconsin] were able to recover from [Bertola] their attorney's fees for suing [Ionian], then they would also be able to recover from [Ionian] their attorney's fees for suing [Bertola]. The implication, of course, would be that total recovery of attorney's fees is permissible whenever one sues joint tortfeasors." *Ashley*, 903 F.2d at 605.

This takes the exception to the American Rule too far, creating an exception that ultimately swallows the rule and promotes serial litigation. Further, it effectively gives plaintiffs injured by joint tortfeasors a windfall that plaintiffs injured by a single tortfeasor would not receive. Lastly, there is a question whether a party is really forced into third-party litigation if the party can come to a full recovery through litigation with just one party.

9. *Wenk v. Horizon Moving & Storage*, 131 Ariz. 131, 133, 639 P.2d 321, 323 (1982), held that A.R.S. § 12–341.01 applies to appeals as well as trials. Because we conclude that attorneys' fees should not have been be awarded under this section, we decline to award attorneys' fees incurred in this appeal.