**In re Boniface ONUBAH, Debtor.**

**Boniface Onubah, Appellant,**

**v.**

**Nancy Zamora, Chapter 7 Trustee, Appellee.**

BAP No. CC–06–1409–McMoD.
Bankruptcy No. SV 06–10910–KT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on July 26, 2007.

Filed Aug. 29, 2007.

Ordered Published Aug. 31, 2007.

Andrew E. Smyth, Smyth Law Office, Los Angeles, CA, for Boniface O. Onubah.

Jeffrey I. Golden, Weiland, Golden, Smiley, Wang, Ekvall & Strok, LLP, Costa Mesa, CA, for Nancy Hoffmeier, Ch. 7 Trustee.

Before: McMANUS,[1] MONTALI, and DUNN, Bankruptcy Judges.

## OPINION

McMANUS, Bankruptcy Judge.

The debtor, Boniface Onubah, appeals from an order entered on November 14, 2006,[2] granting the motion of the chapter 7 trustee, Nancy H. Zamora, to surcharge his homestead and household goods exemptions. We conclude that the bankruptcy court did not abuse its discretion when surcharging the debtor's exemptions under *Latman v. Burdette*, 366 F.3d 774, 785–86 (9th Cir.2004). We AFFIRM.

## FACTS

Onubah filed a chapter 7 petition on June 15. Among his scheduled assets was a residence located in Calabasas, California, as well as household goods located in that residence. Onubah claimed as exempt $75,000 of the equity in the residence and the entire $25,000 value of the household goods.

Onubah's residence had a scheduled value of $2 million and was encumbered by two deeds of trust securing claims totaling $1,680,000, as well as a $2,000 lien for delinquent homeowners' association assessments and four judicial liens. The most senior judicial lien, securing a $5,400 judgment, was held by Geoffrey Ojo. The remaining three judicial liens secured judgments exceeding $2.4 million in favor of the California Department of Health Services (CDHS).

Despite the apparent lack of equity, Zamora was able to procure a buyer for the residence that produced a return for the estate. This was due in part to the $2.3 million sale price, slightly higher than the scheduled value, and in part to Zamora's agreement with CDHS permitting the estate to retain $96,000 of the sale proceeds otherwise due CDHS. The sale price permitted payment in full of the two deeds of trust, the delinquent real property taxes and homeowners' association assessments, the judicial lien held by Ojo, Onubah's homestead exemption, and all transactional costs. After paying the $96,000 "carve-out" to the bankruptcy estate, the balance was payable to CDHS.

Zamora filed her motion to approve the sale on August 15. Onubah did not oppose the motion, and on September 5 the bankruptcy court entered an order authorizing the sale. With the sale approved and scheduled to close escrow on September 26, Zamora sent a letter to Onubah, requesting that he vacate and turn over the residence to her by September 15. Onubah refused.

Onubah's refusal to cooperate with the trustee threatened to derail the sale because the buyer's deposit of the sale price into escrow was conditioned upon Onubah relinquishing possession. Further, the holder of the first deed of trust had scheduled a September 28 hearing on its motion

---

**1.** Hon. Michael S. McManus, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

**2.** All relevant dates are in 2006.

to terminate the automatic stay. If granted, the holder of the first deed of trust would be able to foreclose on the residence.

Faced with Onubah's refusal to relinquish possession, on September 20 Zamora filed an emergency motion to compel Onubah to turn over the residence.[3] The motion was scheduled for hearing on September 25.

On September 25, but prior to the hearing on the turnover motion, Onubah filed, and the bankruptcy court granted without a hearing, a motion to convert his case from chapter 7 to chapter 11.

In a bid to salvage the sale, Zamora immediately moved to reconvert the case to one under chapter 7. On September 25, with Onubah present in the courtroom, the bankruptcy court took up Zamora's reconversion and turnover motions.

Under questioning by the bankruptcy court, Onubah was unable to explain coherently why his creditors would be better off under chapter 11. With no indication that he had the ability to reorganize his financial affairs under chapter 11, the bankruptcy court ordered the case reconverted to chapter 7 and then granted the turnover motion. Its turnover order required Onubah to remove his household goods and turn over the residence to Zamora by 5:00 p.m. on September 26.

When representatives of the estate arrived at the residence to take possession of it, Onubah informed them that an involuntary bankruptcy petition had been filed against him on September 26. Welford and Gilfert Jackson had filed the involuntary petition in the Los Angeles Division of the Central District.

Zamora responded on September 29[4] by filing a motion seeking, among other things, the reassignment of the involuntary petition to Judge Kathleen T. Thompson, the bankruptcy judge presiding in the chapter 7 case, the dismissal of the involuntary petition, and the termination and annulment of the automatic stay created by the filing of the involuntary petition, in order to permit Zamora to proceed with the sale.

On September 29, the bankruptcy court, Judge Geraldine Mund presiding, entered an order reassigning the involuntary petition to Judge Thompson as well as terminating and annulling the automatic stay to allow Zamora to move ahead with the sale. In so ordering, Judge Mund concluded that the involuntary petition had been filed solely to circumvent Judge Thompson's turnover order. Judge Mund also found that the parties filing the involuntary petition, Welford and Gilfert Jackson, were known to "act in tandem to prevent foreclosures and eviction[s]."

Later, when dismissing the involuntary petition, Judge Thompson similarly concluded that, by filing the involuntary petition, Onubah and the Jacksons were

---

3. The turnover motion requested the bankruptcy court to direct the U.S. Marshal to enforce the turnover order and to surcharge Onubah's homestead exemption by $47,500, $10,000 in favor of the estate and $37,500 in favor of CDHS. The bankruptcy court eventually surcharged the debtor as requested by Zamora. That surcharge, however, is not the subject of this appeal.

4. Although the sale did not close by September 26, the sale ultimately was consummated on a date not specified in the record. While the record does not indicate that the buyer agreed to extend the September 26 closing date, or that the holder of the first deed of trust agreed to continue the September 28 hearing on its motion for relief from the automatic stay, we can infer from the fact that the sale was consummated sometime after September 30, that the buyer and the holder of the first deed of trust agreed to, or acquiesced in, a later closing.

"working together to obstruct the judicial process and prevent the [t]rustee from administering the [residence]."

Despite the bankruptcy court's order permitting Zamora to move ahead with the sale, Onubah still refused to cooperate and turn over the residence. So, on September 30, Zamora had the U.S. Marshal evict Onubah. Zamora then removed and stored Onubah's household goods.

Onubah's efforts to obstruct the sale, while unsuccessful, caused the bankruptcy estate to incur significant expenses. Zamora paid $20,000 in legal fees, $5,000 for the services of the U.S. Marshal, $1,873.40 to change the locks, and $23,544.78 for the removal and storage of Onubah's household goods. These costs totaled $59,418.18.

In order to recover these costs, Zamora filed a motion to surcharge Onubah's homestead and household goods exemptions by $27,500 and $25,000, respectively. The bankruptcy court entered an order granting the surcharge on November 14. In support of the surcharge, the bankruptcy court cited Onubah's "numerous actions to delay and frustrate" Zamora's administration of the chapter 7 estate.

Onubah timely appealed the surcharge order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (N), (O) and 1334. We have jurisdiction under 28 U.S.C. §§ 158(a)(1) and (c)(1).

## STANDARD OF REVIEW

We review the bankruptcy court's surcharge of the debtor's exemptions for an abuse of discretion. *Latman v. Burdette*, 366 F.3d at 786. A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law

or a clearly erroneous assessment of the evidence. *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 920 (9th Cir. BAP 1999). Findings of fact upon which a surcharge is based are reviewed for clear error, while the bankruptcy court's conclusions of law are reviewed de novo. *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003); *see also Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir.2006).

## DISCUSSION

Onubah argues that the bankruptcy court improperly surcharged his homestead and household goods exemptions because: (A) his misconduct did not involve the concealment of assets; (B) the surcharge was in reality a sanction because the costs incurred by the estate "had nothing to do with [his] exemptions;" (C) legal fees are not recoverable in the surcharge of an exemption, "when a defendant (or debtor) is asserting his rights (even if mistakenly);" and (D) "judgment creditors usually do not get to execute on exemptions to recover costs of gaining possession to collateral."

Each of these arguments lacks merit.

### A

A surcharge of a debtor's exemptions is appropriate only in "exceptional circumstances." *Latman*, 366 F.3d at 786. Exceptional circumstances are present when a debtor engages in inequitable conduct that, when left unchallenged, denies "creditors access to property in excess of that which is properly exempted under the Bankruptcy Code." *Latman*, 366 F.3d at 786.

In *Latman* the debtors concealed $7,000 in proceeds from the sale of a vehicle and a boat. When the trustee became aware of these assets and their sale, he requested an accounting of the sale proceeds. The

trustee moved to surcharge the debtors' exemptions when they refused to provide him with an accounting and then turn over the sale proceeds. *Latman*, 366 F.3d at 778–79.

In this case, Onubah did not conceal his residence. However, when Zamora asked Onubah to vacate the residence by September 15, he refused.

When Zamora filed a motion to compel Onubah to vacate the residence, Onubah responded by converting his chapter 7 petition to one under chapter 11 in an attempt to end Zamora's administration of the bankruptcy estate. This was done even though Onubah did not have the financial ability to reorganize his affairs.

When the petition was reconverted to chapter 7, and after Zamora obtained the turnover order, Onubah colluded with others to file an involuntary petition against himself to prevent the enforcement of the order and the sale.

When Zamora eliminated the involuntary petition as an impediment to the sale, she again demanded that Onubah vacate the residence. He refused, requiring Zamora to use the U.S. Marshal to evict him. Onubah also failed to remove his household goods from the residence, forcing Zamora to remove and store them.

This is not a case where a debtor took a good faith but erroneous position in an exemption dispute with a trustee or a creditor. *Cf. In re Gordon*, 322 B.R. 886, 888 (Bankr.C.D.Cal.2005). Onubah's efforts at obstruction were not litigation tactics undertaken in good faith.

What should have been a $96,000 return to the bankruptcy estate from the sale was reduced by almost $60,000 in costs that were incurred because of Onubah's misconduct.

Nonetheless, Onubah argues that his misconduct is qualitatively different from the debtors' misconduct in *Latman*. They concealed assets; he did not.

Onubah's interpretation of *Latman* is too narrow.

The misconduct that led to the surcharge in *Latman* was not just the initial concealment of the $7,000. It was the debtors' failure to account for and turn over the money. *Latman*, 366 F.3d at 785.

Although Onubah did not attempt to keep assets by concealing them from the trustee, his misconduct was to the same end. Even though he disclosed his residence, Onubah refused to turn it over so the trustee could sell it and realize the nonexempt equity for the benefit of creditors. He sought to keep that nonexempt equity for himself.

Not only did Onubah refuse to obey the turnover order, he abused the processes of the bankruptcy court, first by converting his petition to one under chapter 11 for an improper purpose and then by colluding in the filing of an improper involuntary petition.

In this regard, it must be noted that Onubah has not challenged the bankruptcy court's interpretation of his actions as efforts to obstruct a sale of his home.

A surcharge of exemptions does not hinge on a concealment of assets. It requires misconduct that would cause "fraud on the bankruptcy court and the [debtor's] creditors." *Latman*, 366 F.3d at 785. This may include concealment of assets, but is not limited to such cases. An unjustified refusal to turn over property of the estate to the trustee may be the basis for a surcharge of the debtor's exemptions. *Latman*, 366 F.3d at 785 (citing *In re Ward*, 210 B.R. 531, 532 (Bankr.E.D.Va. 1997)).

Other courts have held likewise. For instance, in *In re Karl*, 313 B.R. 827, 829–

30 (Bankr.W.D.Mo.2004), a bankruptcy court surcharged an exemption because of the debtors' refusal to turn over to the estate a nonexempt truck. *See also Scrivner v. Mashburn (In re Scrivner)*, 370 B.R. 346 (10th Cir. BAP 2007) (surcharge based on the failure to turn over nonexempt royalties that were property of the estate).

Accordingly, we reject Onubah's interpretation of *Latman* and his argument that because he did not conceal his home, his exemptions cannot be surcharged.

### B

This case differs from *Latman*, as well as *Ward, Karl*, and *Scrivner*, in one significant respect. The debtors in those cases successfully resisted efforts of the trustees to compel the turnover of nonexempt property. Thus, it was necessary to reduce their exemptions by the value of the nonexempt property they had failed to turn over. If this had not been done, these debtors would have sheltered more assets than they could have legitimately exempted.

Onubah, on the other hand, was unsuccessful in his attempt to keep his home from the trustee. Zamora was able to obtain possession of, and sell, Onubah's home for the benefit of creditors.

Onubah therefore argues that because he did not succeed in profiting from his misconduct, the surcharge "had nothing to do with [his] exemptions" and so was an impermissible sanction. In the words of the *Latman* court, the surcharge was unnecessary to ensure that Onubah "exempt[ed] an amount no greater than what is permitted by the exemption scheme of the Bankruptcy Code." *See Latman*, 366 F.3d at 786; *see also Karl*, 313 B.R. at 831.

█ *Latman*, however, does not limit the availability of a surcharge only to cases where the debtor successfully keeps nonexempt property out of the hands of the trustee. Its holding is broader: "Under exceptional circumstances, such as those presented here, surcharge may be the only means fairly to ensure that debtors retain their statutory 'fresh start,' while also permitting creditors access to property in excess of that which is properly exempted under the Bankruptcy Code." *Latman*, 366 F.3d at 786.

Even though Onubah was unsuccessful in his attempt to keep his home, his misconduct nonetheless deprived the estate and his creditors of some of the nonexempt equity in it. The estate incurred substantial costs, approximately $60,000, obtaining possession of and selling Onubah's residence. Absent a surcharge, what should have been a $96,000 recovery by the estate, would have been a $36,000 return. While the $60,000 difference did not go into Onubah's pocket, it came out of the pockets of his creditors. In every sense, Onubah's creditors were denied "access to property in excess of that which" Onubah could properly exempt. *Latman*, 366 F.3d at 786.

The *Latman* court noted that surcharge is similar to the remedy fashioned by the panel in *Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000). *Latman*, 366 F.3d at 786 n. 9.

In *Arnold*, the debtor had a personal injury claim which was pending when he filed a chapter 7 petition. Because the debtor had not exempted the personal injury suit, the trustee hired special counsel on a contingency fee basis to prosecute it. When the trustee settled the suit for $200,000, the debtor amended his exemption and claimed the entire settlement as exempt.

We recognized in *Arnold* that prejudice to the estate or to creditors causing actual economic loss may be the basis for the

disallowance of an exemption, or conditioning its allowance on the debtor purging the effect of his prejudicial conduct. *Arnold,* 252 B.R. at 788–89.

The *Arnold* panel concluded that by waiting for the trustee to recover the asset before claiming an amended exemption, the debtor had caused unfair prejudice to the estate. Therefore, allowance of the amended exemption was conditioned on the debtor compensating the estate for the cost of obtaining the settlement. "Such amounts ... should be paid out of the proceeds of the [personal injury suit] in order to avoid any prejudice to [the trustee] or other third parties." *Arnold,* 252 B.R. at 789.

Here, even though Onubah raised no objection to the sale before the court authorized it, he refused to turn over his residence to Zamora and actively attempted to obstruct a sale by disobeying the turnover order and by twice invoking the chapter 11 reorganization process despite an inability to reorganize his financial affairs. This conduct unfairly prejudiced and damaged the estate.

■ While we agree that the purpose of a surcharge cannot be the punishment of a debtor, the surcharge in this case was not meted out to punish Onubah. Consistent with *Latman,* the surcharge was calculated to compensate the estate for the actual damage inflicted by Onubah' misconduct.

## C

■ Onubah also asserts that legal fees are not recoverable in connection with the surcharge of an exemption, "when a defendant (or debtor) is asserting his rights (even if mistakenly)." Without any discussion, Onubah cites *Bertola v. N. Wisconsin Produce Co. (In re Bertola),* 317 B.R. 95 (9th Cir. BAP 2004), for this proposition.

*Bertola* has no application here because the question in that case was whether the prevailing party could recover attorney's fees under applicable nonbankruptcy law. *Bertola,* 317 B.R. at 99–100. "[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." *Bertola,* 317 B.R. at 99 (quoting *Heritage Ford v. Baroff (In re Baroff),* 105 F.3d 439, 441 (9th Cir.1997)).

*Bertola* is distinguishable because state law does not govern the substantive issues raised in connection with the surcharge of a bankruptcy debtor's exemptions. This remedy is exercised "to protect the integrity of the bankruptcy process." *Latman,* 366 F.3d at 786.

■ We hasten to add, however, that the remedy of surcharge may not be used to shift costs to a debtor who has unsuccessfully, but in good faith, opposed a trustee's effort to liquidate a partially exempt asset or who has otherwise challenged the trustee's administration of the estate.

In this case, the bankruptcy court awarded approximately $20,000 of attorney's fees to the estate as part of the surcharge of Onubah's exemptions. This award was not given just because Onubah did not prevail. Rather, these fees were awarded because he had disobeyed a court order and abused the bankruptcy process in order to obstruct an approved sale of his home. His conduct caused the estate to incur unnecessary expenses, including attorney's fees, and without the award the estate would not have been made whole.

■ As explained above, this award is consistent with the remedy of surcharge and is also consistent with the "American Rule." Under the American Rule, attor-

ney's fees are not recoverable, unless provided for by a contract or a statute. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Baroff,* 105 F.3d at 441. But, the American Rule has three exceptions: (1) when a litigant preserves or recovers a fund for the benefit of others; (2) when a losing party acts in bad faith; and (3) in a civil contempt action for disobedience of a court order. *Perry v. O'Donnell,* 759 F.2d 702, 704 (9th Cir.1985) (citing *Alyeska,* 421 U.S. at 257–59, 95 S.Ct. 1612).

Even a charitable view of Onubah's conduct in this case would characterize it as being undertaken in "bad faith" and as an abuse of the bankruptcy process. This implicates the second exception to the American Rule.

Therefore, we conclude that the bankruptcy court did not abuse its discretion or misapply the law when it awarded attorney's fees as part of the surcharge of Onubah's exemptions. *See Scrivner,* 370 B.R. at 349 (permitting award of attorney's fees to trustee as part of a surcharge of the debtor's exemptions).

**D**

Onubah next contends that "judgment creditors usually do not get to execute on exemptions to recover costs of gaining possession to collateral." Citing 11 U.S.C. § 544(a) for the proposition that a chapter 7 trustee "stands in the position of a judgment creditor," Onubah argues that a bankruptcy trustee may not surcharge a debtor's exemptions because a judgment creditor cannot do so outside of bankruptcy court.

The bankruptcy trustee, however, is not limited to the rights of a judicial lien creditor under applicable nonbankruptcy law.

Section 544(a) gives the bankruptcy trustee the rights and powers of certain creditors, including a creditor whose claim is secured by a judicial lien, to avoid transfers of property of the debtor under applicable nonbankruptcy law. However, section 544(a) does not limit the trustee's other rights and powers, including the right to seek equitable remedies, like surcharge, to prevent a debtor from violating the integrity of the bankruptcy process.

■ The integrity of this process requires, among other things, that a debtor fully disclose all assets and liabilities when the petition is filed, provide the trustee with financial records, surrender all property of the estate to the trustee, cooperate with the trustee's administration of the estate, comply with the Bankruptcy Code's exemption scheme, and obey the bankruptcy court's lawful orders. 11 U.S.C. §§ 521(a)(1), (a)(2), (a)(3), and (a)(4), 522, 727(a)(6)(A); *Latman,* 366 F.3d at 786.

When a chapter 7 debtor fails to turn over property of the estate to the trustee, the trustee generally has two tools to deal with the problem. First, the trustee may seek a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a). However, even when successful, the denial of a debtor's discharge will not compensate the estate for the additional costs incurred to recover property of the estate from an uncooperative debtor. This is one reason trustees have been given resort to a second remedy, the surcharge of the debtor's exemptions.

■ The trustee's ability to request a surcharge of a debtor's exemptions "may be the only means fairly to ensure that debtors retain their statutory 'fresh start,' while also permitting creditors access to property in excess of that which is proper-

ly exempted under the Bankruptcy Code."
*Latman,* 366 F.3d at 786.[5]

## CONCLUSION

We conclude that the bankruptcy court did not abuse its discretion when it surcharged Onubah's homestead and household goods exemptions. Onubah's refusal to turn over the residence to the estate, his obstruction of the sale, and his failure to remove his household goods warranted the surcharge.

We AFFIRM.

---

5. Denial of discharge and surcharge are not mutually exclusive remedies. By seeking a denial of a chapter 7 debtor's discharge, the trustee is not precluded by the election of remedies or claim preclusion doctrines from also seeking a surcharge. *Latman,* 366 F.3d at 781–784.