FILED

JUL 08 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   SC-12-1272-BaPaJu |
| ) | |
| ANTONIO GALINDO, ) | Bk. No.   10-12794-MM7 |
| ) | |
| Debtor. ) | Adv. No.   10-90473 |
| _____ ) | |
| ) | |
| ANTONIO GALINDO, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| JARRED WHITED, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on May 15, 2013
at Pasadena, California

Filed - July 8, 2013

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

_____

Appearances:   Daniel Marshall, Esq. argued for Appellant;
Ellen Ezelle Turnage, Esq. of McCoy, Turnage &
Robertson LLP argued for Appellee.

_____

Before: BASON,[2] PAPPAS, and JURY, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] Hon. Neil W. Bason, Bankruptcy Judge for the Central District of California, sitting by designation.

Chapter 7[3] debtor Antonio Galindo ("Galindo") appeals from the bankruptcy court's judgment awarding $78,075.07 in attorney fees and costs against him on a nondischargeability judgment of $1,648.29. Galindo's principal arguments are that the fees and costs are excessive, disproportionate to actual damages, and should not include compensation for prosecution of a state court action that was commenced before this adversary proceeding. We AFFIRM.

## I.  FACTS

In December 2009, appellee Jarred L. Whited ("Whited"), a twenty-year-old Navy sailor, together with his eighteen-year-old wife visited Galindo's used car dealership, National KARS, Inc. dba Southbay Preowned ("Southbay"). The Whiteds became interested in a 2006 Hyundai Sonata (the "Sonata") that they saw on the lot.

Whited offered his wife's Ford Focus (the "Focus") as a trade-in on the sale. At Galindo's suggestion, the Whiteds transferred the Focus to Southbay for a $1,500 credit on the sale.

### A.  Galindo's Wrongful Acts

Whited financed the $12,100 balance under a Retail Installment Sales Contract (the "Contract") that listed Southbay as the secured creditor and seller of the Sonata. The Contract stated that Southbay had ten days after the sale of the Sonata to sell the Contract to a financing company or else Southbay would

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

carry the financing itself.

Galindo told Whited that Security National Automotive Acceptance Corporation ("SNAAC") had agreed to finance the sale, and Galindo arranged an automatic debit to SNAAC from Whited's bank account. On December 31, 2009, SNAAC received the first payment on the Contract from Whited's bank account, although the payment was not actually due until January 17, 2010.

In fact, SNAAC had not committed to purchase the Contract. When Whited discovered that fact and other misrepresentations by Galindo, he sought either to rescind the Contract or to clarify that the purchase was being financed by Southbay. Whited offered to set up another allotment from his military pay for Southbay's benefit for the February payment, and he asked for a payment plan or invoice to reflect the status of the payments that he had already made on the Contract.

Galindo refused these requests. Instead he insisted that Whited make the January payment a second time – this time to Southbay instead of SNAAC – and stated that otherwise Southbay would repossess the Sonata.

On January 31, 2010, at Galindo's direction, a tow company repossessed the Sonata. Whited retained counsel, who wrote to Galindo on February 2, 2010, asserting numerous violations of California law and demanding that Galindo rescind the deal and return Mrs. Whited's Focus. Instead, Southbay foreclosed on the Sonata (and sold it to another customer on March 19, 2010 for slightly more than the sale price to Whited). At the end of May, 2010, Southbay sold the Focus to a related dealership owned by

- 3 -

Galindo (which resold it for $5,495).[4] Southbay then closed its business.

## B. Whited's Actions Against Galindo

Whited sued Galindo and Southbay in state court. Galindo did not respond but, before Whited could obtain a default judgment, Galindo filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 21, 2010 (the "Petition Date").

On September 28, 2010, Whited timely filed his nondischargeability complaint in the bankruptcy case. On January 3, 2012, the bankruptcy court conducted a trial regarding Whited's claims under Sections 523(a)(2)(A) and 523(a)(6).[5]

After a trial the bankruptcy court issued a memorandum decision finding that Galindo made false statements to Whited with regard to the condition of the vehicle and financing, and concluding that Galindo was liable to Whited for statutory and common law fraud and conversion, including under the California Consumers Legal Remedies Act (the "Consumer Remedies Act"). Cal. Civ. Code § 1770 et seq. The bankruptcy court ruled that the debt was nondischargeable under Section 523(a)(2)(A), and that because Galindo's acts were willful and malicious, the debt was also nondischargeable under Section 523(a)(6).

## C. Attorney fees and costs

The bankruptcy court ruled that Galindo was liable for

---

[4] The bankruptcy court did not evaluate any claims relating to the trade-in of the Focus because that was Mrs. Whited's separate property and she was not designated as a co-plaintiff.

[5] The Complaint also asserted a claim for denial of discharge under Section 727(a)(2). But Whited abandoned that claim before trial.

- 4 -

Whited's legal expenses under California Civil Code § 1780(e). In post-trial proceedings the parties filed briefs addressing the dollar amount of fees and costs to be awarded.

Whited sought $91,600.00 in attorney fees and $2,785.07 in costs. The bankruptcy court issued a tentative ruling (the "Tentative Ruling") allowing $75,440.00 in fees and $2,635.07 in costs. After hearing oral argument the bankruptcy court adopted the Tentative Ruling and included the fees and costs in its judgment. Galindo timely filed a notice of appeal. He does not challenge the underlying nondischarcheability judgment of $1,648.29, but he does challenge the award of legal fees and costs.

## II.   ISSUE

Whether the bankruptcy court abused its discretion in its award of attorney fees and costs to Whited.[6]

## III.   JURISDICTION AND AUTHORITY

We have jurisdiction under 28 U.S.C. § 158. The bankruptcy court had both the jurisdiction and authority to hear Whited's claims, including any award of attorney fees. Deitz v. Ford (In re Deitz), 469 B.R. 11 (9th Cir. BAP 2012) (interpreting Stern v. Marshall, 131 S.Ct. 2594 (2011)). See also 28 U.S.C. §§ 157(b)(2)(I) & 1334(b).

## IV.   STANDARD OF REVIEW

We review the bankruptcy court's award of attorney fees for an abuse of discretion. Feder v. Lazar (In re Lazar), 83 F.3d

_____

[6] In his brief, Whited also requests that this Panel award Whited his attorney fees for litigating this appeal. Whited may seek such fees by appropriate post-judgment proceedings before the Bankruptcy Court.

- 5 -

306, 308 (9th Cir. 1996). A bankruptcy court abuses its discretion if it bases its decision on an incorrect legal rule or if its application of the correct legal standard was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." Ellsworth v. Lifescape Med. Assoc., P.C. (In re Ellsworth), 455 B.R. 904, 914 (9th Cir. BAP 2011) (quoting United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

On appeal, Galindo argues that the bankruptcy court did not have authority to award attorney fees under California Civil Code § 1780(e). Alternatively, Galindo argues that Whited was not the prevailing party, or that the fees and costs awarded were not reasonable.

### A. The bankruptcy court had authority to award attorney fees to Whited under California law.

The "American Rule" is that attorney fees generally are not recoverable by a prevailing party unless specifically allowed by contract or statute. Alyeska Pipeline Serv. Co. V. Wilderness Soc'y, 421 U.S. 240, 257-58 (1975); Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441 (9th Cir. 1997). In a nondischargeability action, attorney fees can be included if the fees are recoverable under a state statute. Bertola v. N. Wis. Prod. Co. (In re Bertola), 317 B.R. 95, 99-100 (9th Cir. BAP 2004); see also Deitz, 469 B.R. 11.

Under the Consumers Remedies Act, representations "that a transaction confers or involves rights, remedies, or obligations which it does not have or involve" constitute unlawful, unfair

- 6 -

practices. Cal. Civ. Code § 1770(a)(2) and (14). "Any consumer who suffers any damage as a result of the use or employment by a person of [an unlawful practice] may bring an action against that person . . ." Cal. Civ. Code § 1780(a). Upon a final determination, "[t]he court shall award court costs and attorney's fees to a prevailing plaintiff . . ." Cal. Civ. Code § 1780(e) (emphasis added).

The bankruptcy court concluded, and Galindo does not contest, that Whited's claims come within the Consumer Remedies Act, which mandates attorney fees to a prevailing plaintiff. Therefore, if Whited is properly characterized as the prevailing party, the bankruptcy court was both authorized and required to award attorney fees and costs against Galindo.

**B.    Galindo misstates the facts.**

Before addressing the merits of Galindo's arguments, we must clarify a number of factual matters that Galindo misstates. Galindo assumes that approximately $27,210 of the bankruptcy court's judgment is attributable to the state court litigation. Galindo challenges these fees and costs on several grounds: he claims that Whited was not the prevailing party in that litigation; he argues that the state court proceedings were duplicative of work done in the bankruptcy court; and he claims that it is virtually impossible to separate the attorney fees and costs incurred in pursuing Southbay from those incurred in pursuing Galindo himself.

It is true that according to Whited's nondischargeability complaint he had incurred attorney fees and costs of $27,210 as of September 27, 2010. But Whited included only a portion of

- 7 -

those fees and costs in his total request to the bankruptcy court. At oral argument before us Whited's counsel confirmed that Whited had omitted from his fee request any state court litigation that might be duplicative and any fees incurred in pursuing Southbay. We calculate, based on the daily time and fee records submitted to the bankruptcy court, that the fees requested through September 27, 2010 add up to an aggregate of $14,080, not $27,210.

Moreover, most of that $14,080 involves nondischargeability research and other matters that appear to be bankruptcy-related. Only the initial, one-page invoice appears to include any nonbankruptcy matters. That invoice is for $6,040, and after deducting the one bankruptcy matter on that invoice – $1,120 to "[d]raft motion to lift stay" – it appears that the dollar amount sought by Whited in connection with the state court litigation was only $4,920 ($6,040 - $1,120 = $4,920).

As for Galindo's assertion that Whited was not the prevailing party in the state court litigation, it is true that Whited's claims against Galindo eventually were dismissed by the state court. But that appears to be because the litigation was pursued in the bankruptcy court rather than the state court. Galindo has not shown how the state court dismissal in any way reflects negatively against Whited.

Galindo asserts that the fees and costs incurred in connection with the state court litigation must have been duplicative, but he has not pointed us to anything in the excerpts of record to support that assertion. We are not required to scour the record to find support for his arguments.

- 8 -

See Mitchel v. Gen. Elec. Co., 689 F.2d 877, 878-79 (9th Cir. 1982).

In any event we have thoroughly reviewed the daily time records and they do not show any duplication. To the contrary, they reflect non-duplicative tasks that are equally necessary to litigation in either state court or bankruptcy court. For example, the daily time records include an initial meeting between the Whiteds and their attorney, drafting damage calculations, drafting a notice to the dealership, reviewing documents from the Department of Motor Vehicles, drafting a time line of events, and researching the statutes and case law relevant to the claims against Galindo. All of those tasks would have been properly undertaken in contemplation of filing a nondischargeability complaint if they had not already been done in connection with the state court litigation. Likewise, the minimal time billed for initial drafting of the state court complaint is not duplicative because the same claims had to be litigated in the nondischargeability action. In other words, Galindo has not supported his factual assertions that any charges were duplicative or unnecessary.

With these factual clarifications, we turn to the legal merits of Galindo's arguments.

**C. The bankruptcy court did not abuse its discretion in determining that Whited was the prevailing party on most issues.**

Galindo argues that Whited's prosecution of the state court action did not "directly contribute" to resolution of the nondischargeability litigation. Therefore, he claims, Whited was the prevailing party for purposes of any fees relating to the

- 9 -

state action.

Galindo has not established that legal fees and costs are only recoverable if they "directly contribute[d]" to the bankruptcy litigation. Fees for preparing a demand letter to Galindo, for example, would appear to be recoverable under the Consumer Remedies Act regardless of whether that letter directly contributed to the bankruptcy litigation.

Galindo relies on a case that involved parallel efforts by both a private individual and an attorney general, each on behalf of a government entity. <u>Ciani v. San Diego Trust & Sav. Bank</u>, 25 Cal. App. 4th 563 (1994). Unlike the parties in <u>Ciani</u>, Whited was not a party to two matters that proceeded in parallel. Rather, Whited commenced his claims against Galindo in state court; that action was stayed by the automatic stay of Section 362(a) when Galindo filed his chapter 7 petition; and Whited successfully concluded his litigation in the bankruptcy court by obtaining a judgment against Galindo.

It is true that Whited did not prevail on every issue in the state court and the bankruptcy court. But the bankruptcy court had broad discretion in determining whether to recognize Whited as the prevailing party based on "equitable considerations" when it was "clear that [he] has otherwise achieved [his] main litigation objective." <u>Graciano v. Robinson Ford Sales, Inc.</u>, 144 Cal. App.4th 140, 151 (2006) (<u>quoting</u> <u>Castro v. Super. Ct.</u>, 116 Cal. App.4th 1010, 1019-20 (2004)).

Moreover, as discussed below, the bankruptcy court did disallow some fees for issues on which it found that Whited was not the prevailing party. For all of these reasons, Galindo has

not shown any abuse of discretion in the bankruptcy court's treatment of Whited as the prevailing party on most issues.

**D.    The award should not be limited as if it were a default judgment in San Diego Superior Court.**

Galindo asserts a frivolous argument that the attorney fee award should be limited by analogy to a San Diego Superior Court local rule regarding default judgments, apparently because the state court action only advanced to the point at which Whited requested a default judgment.  The Superior Court's local rule provides that "[w]henever the obligation sued upon provides for the recovery of a reasonable attorney fee, the fee in each default case <u>may</u> be fixed pursuant to [a] schedule."  San Diego Super. Ct. R. 2.5.10 (emphasis added).[7]

First, as shown by the emphasized text, the Superior Court's local rule is discretionary.  Second, a local Superior Court rule does not have the force of California law and is not binding on the federal bankruptcy court.  Third, the adversary proceeding in the bankruptcy court did not result in a default judgment, so by its own terms the rule is inapplicable.

Galindo appears to acknowledge all of these things but he suggests that the Superior Court rule should be used as a guideline because the Superior Court action was dismissed and, he asserts, it did not contribute to the resolution of the adversary proceeding.  He provides no analysis or citations to the excerpts of record and, as explained above, our own analysis contradicts

---

[7] The local rule includes a schedule in which a court may award $375 in attorney fees for a default judgment in the amount of $1,501 to $2,000.

- 11 -

Galindo's factual assertions. He has not established any reason why this inapplicable, discretionary Superior Court rule should limit in any way the fee award in this case.

**E. Galindo has not established that the award of actual and reasonable fees and costs was an abuse of discretion simply because of the relatively small amount of actual damages.**

Galindo's most appealing argument is that the award of fees and costs is very large in proportion to actual damages. He cites various cases in which fees were reduced because the number of hours spent were not reasonable in comparison with the results obtained. See Winiger v. SI Mgmt, LP, 301 F.3d 1115, 1125 (9th Cir. 2002); Abouab v. San Francisco, 141 Cal. App. 4th 643 (2006); Choate v. Cnty. of Orange, 86 Cal. App. 4th 312, 324 (2000); Sarah Morrison v. Vineyard Creek, 193 Cal. App. 4th 1254 (2011).[8]

Despite its initial appeal, this argument fails for two alternative reasons. First, Galindo has not established that the

---

[8] Galindo also cites to a California Supreme Court case for the proposition that attorney fees should be denied based on a plaintiff's minimal success. Serrano v. Unruh, 32 Cal.3d 621, 635-36 (1982). The court in Serrano did not address this issue and Galindo appears to have simply made up an alleged quotation from this case regarding a "grossly inflated attorney fee request."

Our own research reveals that the quoted language appears in a different case - Chavez v. Los Angeles, 47 Cal.4th 970, 976 (2010) - but that case is likewise distinguishable. In Chavez the California Supreme Court affirmed the trial court's exercise of its discretion in denying a fee request of $870,935.50 on a jury verdict of $1,500 in economic damages and $10,000 in noneconomic damages, which was "minimal success" in view of the claims asserted in that case. In this case, in contrast, (a) Whited's success was not "minimal" in relation to the claims at issue, (b) the bankruptcy court exercised its discretion to award, not deny, most of the requested fees, and (c) the total fees are a fraction of the dollar amount sought in Chavez.

- 12 -

ratio of damages to fees is relevant under the applicable statute. The Consumers Remedies Act provides without any qualification that "[t]he court shall award court costs and attorney's fees to the prevailing plaintiff." Cal. Civ. Code § 1780(e). The plain language of the statute does not include any requirement that the fees be proportional to actual damages.

Second, assuming for the sake of argument that proportionality were relevant under the statute, the bankruptcy court already took that into consideration. It looked to an analogous statute – one that, if anything, imposes more stringent requirements than the Consumer Remedies Act to qualify for an award of attorney fees and costs. The analogous statute provides that a court may award attorney fees to a successful party "in any action which has resulted in the enforcement of <u>an important right affecting the public interest</u> . . . ." Cal. Civ. Proc. Code § 1021.5 (emphasis added). The California Supreme Court interpreted this statute in <u>Graham v. DaimlerChrysler Corp.</u>, 34 Cal. 4th 553 (2004). In that case the purchasers of the defendant's trucks brought an action for breach of warranty alleging that the defendant's marketing materials included false statistics. <u>Id.</u> at 561. The California Supreme Court affirmed an award of fees under California Civil Code § 1021.5 – a codification of the "private attorney general" doctrine – on the basis that the lawsuit implicated an issue of "public safety" because the results of the suit would benefit thousands of customers. <u>Id.</u> at 578.

The bankruptcy court observed that Galindo's situation involves similar public interests:

- 13 -

> Every customer that goes into a car dealership has been given a plethora of rights to insure that the transaction is treated fairly between the dealer and the consumer. And I found in numerous ways that Mr. Galindo had overlooked or intentionally violated those requirements. . . . this is exactly the kind of case where a consumer attorney basically needs the opportunity to have the attorney's fees award be disproportional to the amount of the loss, because otherwise these kinds of cases would never be brought.

Status Conf. Hr'g Tr. 7:16-8:5, March 1, 2012.

We agree. Nothing in the excerpts of record contradicts Whited's assertions before the bankruptcy court that most consumers lack the funds for this type of litigation. As Whited's counsel argued, without fee awards the remedial purpose of the Consumer Remedies Act will fail.

The bankruptcy court also analogized to Hayward v. Ventura Volvo, 108 Cal. App. 4th 509 (2003) (award of attorney fees was appropriate to deter unfair and deceptive business practices). Galindo attempts to distinguish Hayward because it involved a civil penalty, and fees and costs that were approximately double the damages award, whereas he points out that the judgment on this appeal awarded fees and costs that are approximately 47 times the actual damages. But Galindo reads too much into these differences. Hayward illustrates that when public interests are at stake it is appropriate to award substantial attorney fees and costs notwithstanding relatively small actual damages. Hayward supports the bankruptcy court's ruling.

In sum, Galindo has not established any abuse of discretion in awarding legal fees and costs that are large in proportion to the actual damages. As the bankruptcy court noted, the

- 14 -

California legislature has established a statutory scheme intended to protect consumers when dealing with businesses such as used car dealerships.  Awarding actual, reasonable attorney fees incurred in vindicating those consumer rights is entirely appropriate.

**F.  The bankruptcy court has already reduced Whited's legal fees and costs as appropriate.**

Galindo argues that Whited was not successful on every issue presented to the bankruptcy court, and therefore the award should be reduced.  The bankruptcy court already reduced the fees and costs, and Galindo has not shown why any greater reduction would be appropriate.

For example, the bankruptcy court's Tentative Ruling, which it subsequently adopted in its Judgment, reduced fees "related to the motion for relief from the automatic stay totaling $5,240 (entries dated 8/15/10, 9/2/10, 9/9/10, 9/16/10, 11/2/10, 12/2/10, 12/15/10, 12/20/10) and costs of $150 because Whited did not prevail in that matter and it is not directly related to his prevailing cause of action."  Additionally, the bankruptcy court reduced fees for the following reasons:

> The Court also rejected the attorney fees related to preparing fee declaration $2,560 (entries dated 2/8/12, 2/9/12, 3/1/12).  The Court was provided no authority that these fees are customarily included in the award.

> The Court deducted attorneys fees for work that appeared to be largely administrative since it appeared the work could have been done by clerical staff.  The reductions totaled $3,360 for entries dated 4/8/11, 7/11/11, 11/3/11, 11/4/11, and 11/16/11.

> Finally, the Court reduced the attorney fees by $5,000 because the Court believes that

- 15 -

some of the work that Whited's attorney performed at a rate of $400 per hour should have been delegated to a less expensive associate.

The bankruptcy court's careful review and adjustments to the fees and costs are more than adequate to support its award. Galindo has not established any abuse of discretion in not making further reductions.

## VI.  CONCLUSION

Under California law, the bankruptcy court had both the authority and the mandate to award attorney fees and costs to Whited.  Galindo has not established any abuse of discretion in the amount awarded, particularly in view of the important public interests in vindicating consumer rights.

The judgment is AFFIRMED.