NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>KIRK BROWN,<br>　　　　　　Debtor. | BAP No. CC-22-1244-FLS<br><br>Bk. No. 2:22-bk-12577-BB |
| KIRK BROWN,<br>　　　　　　Appellant,<br>v.<br>ROXANA K. CHAMOUILLE,<br>　　　　　　Appellee. | Adv. No. 2:22-ap-01150-BB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Sheri Bluebond, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

For nearly three years, chapter 7[1] debtor Kirk Brown refused to
vacate the real property that his late wife had owned and bequeathed to
her sister, Roxana K. Chamouille. The bankruptcy court determined that

---

[*] This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules
of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of
Civil Procedure.

the lost rent and other damages constituted a debt for willful and malicious injury that was nondischargeable under § 523(a)(6).

Mr. Brown appeals. We discern no error and AFFIRM.

## FACTS

### A.    Prepetition events

Mr. Brown was married to Mandana Kabiri Brown for approximately three years. During the marriage, Mrs. Brown owned real property located in Los Angeles, California (the "Property") as her sole and separate property. She passed away in January 2018. According to Mrs. Brown's will, she devised the Property to her sister, Ms. Chamouille.

The following month, Ms. Chamouille filed a probate petition in the Los Angeles County superior court (the "Probate Action"). Her filing of a corrected inventory and appraisal triggered California Probate Code ("CPC") § 6500, which allowed Mr. Brown to remain on the Property for sixty days: "Until the inventory is filed and for a period of 60 days thereafter, . . . the decedent's surviving spouse and minor children are entitled to remain in possession of the family dwelling . . . ." CPC § 6500. The statutory license to occupy the Property expired on October 28, 2019. Mr. Brown did not vacate the Property and continued to live there with at least one guest.

On March 26, 2020, the superior court entered an order ("Vacate Order") that determined: (1) Mr. Brown had no right to live at the Property; (2)  Mr. Brown must vacate the Property; and (3) Ms. Chamouille

2

was entitled to ownership of the Property. Mr. Brown's appeal of the Vacate Order was unsuccessful, but he and his guest refused to move out.

While the appeal was pending, Ms. Chamouille filed a motion for sanctions in the Probate Action. Among other things, she alleged that Mr. Brown had filed multiple meritless motions and made repeated accusations that Ms. Chamouille had committed "homicide," even though Mrs. Brown had died from cancer. The superior court granted the motion and sanctioned Mr. Brown $15,000 (the "Sanctions Order").

In the meantime, Ms. Chamouille filed a complaint for ejectment against Mr. Brown (the "Ejectment Action"). She moved for summary judgment, and Mr. Brown opposed the motion.

## B. Mr. Brown's chapter 7 bankruptcy case

On May 6, 2022, Mr. Brown filed a chapter 7 bankruptcy petition, which stayed the pending Probate Action and Ejectment Action. In his Schedule A/B, he represented that he did not "own or have any legal or equitable interest in any residence, building, land, or similar property[.]"

Ms. Chamouille obtained relief from the automatic stay to proceed with the Ejectment Action.[2]

## C. Mr. Brown's ejectment

After Ms. Chamouille obtained relief from the automatic stay, the superior court in the Ejectment Action granted her motion for summary

---

[2] Mr. Brown appealed the stay relief order and filed a motion to vacate the order. The district court dismissed the appeal, and the bankruptcy court denied the motion.

judgment and entered judgment on June 20, 2022 against Mr. Brown and his guest (the "Ejectment Judgment"). The Ejectment Judgment provided that Ms. Chamouille "is entitled to and awarded immediate possession of the [Property] and [Mr. Brown and his guest] and anyone else occupying said property has no right to possession of said property whatsoever." Mr. Brown neither appealed from nor complied promptly with the Ejectment Judgment.

The superior court issued Ms. Chamouille a writ of possession for the Property. Mr. Brown and his guest apparently moved out a few days prior to the date of the Sheriff's Department's planned enforcement, and the ejectment and lock-out occurred as scheduled on September 15, 2022.

Ms. Chamouille then took steps to clean and secure the Property, including installing cameras and a security system, hiring a locksmith to rekey the locks, and hauling away junk. Additionally, she learned that Mr. Brown had disposed of the personal property located on the Property that Mrs. Brown had bequeathed to Ms. Chamouille and their parents.

## D. Ms. Chamouille's nondischargeability complaint

Ms. Chamouille filed an adversary complaint seeking a determination that Mr. Brown's debt to her was nondischargeable under § 523(a)(6) and that Mr. Brown should be denied discharge under § 727(a). As to the nondischargeability claim, Ms. Chamouille asserted that Mr. Brown had no legal or equitable right in the Property and "effectuated a willful and malicious scheme to occupy the Property without paying

4

[Ms. Chamouille] any just compensation."

### E.    The motion for summary judgment

Ms. Chamouille moved for summary judgment ("Motion") on the § 523(a)(6) claim only. She alleged that Mr. Brown's refusal to vacate the Property caused her to suffer significant damage: lost rental income of $191,688; legal fees totaling $232,527.02; costs including a locksmith ($858), security system ($5,014.89), and junk haul-away services ($1,698); the loss or destruction of personal property; and the $15,000 sanction.

Ms. Chamouille contended that the debts Mr. Brown owed her arose from willful and malicious acts, including the continued use of the Property when he had no right to occupy the Property and was ordered to vacate it. She alleged that Mr. Brown affirmatively admitted in his discovery responses that he was required to vacate the Property after October 28, 2019, he failed to vacate the Property by that date, and he "had no right to live at the Property at any point in time after October 28, 2019." She contended that his actions constituted a continuous trespass since the date of the Vacate Order and that the injury was willful because Mr. Brown remained on the Property even after the Probate Court determined that he had no right to stay. She argued that the injury was also "malicious" because Mr. Brown had no justification for his defiance of the state court orders.

Ms. Chamouille also argued that the $15,000 sanction for defamatory statements constituted a "willful and malicious" injury.

5

Mr. Brown responded that he was not a trespasser because his occupancy of the Property was lawful until the writ of possession was executed. He cited California case law for the proposition that only a person in "actual possession" may bring suit for trespass to real property. Mr. Brown also contended that the Vacate Order and Ejectment Judgment were stayed by his various appeals, the bankruptcy automatic stay, and COVID-related orders, so he rightfully remained in possession. Finally, he argued that a debt for unpaid rent is an ordinary contractual debt that is dischargeable in bankruptcy.

In a declaration, Mr. Brown testified that he "was aware of court orders that ordered me to vacate this residence" but decided to assert his right to keep legal possession. Confusingly, he also stated, "I realize that court ordered sanctions are not discharged by a bankruptcy and I am not willing and should not have to pay Court Ordered [sanctions]."

In her brief, Ms. Chamouille argued that Mr. Brown's occupancy of the Property also constituted the tort of conversion under California law.

Prior to the hearing on the Motion, the bankruptcy court issued a tentative ruling granting the Motion. It rejected Mr. Brown's position that this was a dispute over unpaid rents; rather, he had a license to remain on the Property that expired on October 28, 2019. After that date, he had no legal right to remain on the Property and admitted as much in discovery. The bankruptcy court noted that the superior court had issued the Vacate Order adjudicating Mr. Brown's and Ms. Chamouille's rights in the

6

Property, and that ruling was affirmed on appeal.

The bankruptcy court concluded that there was no genuine issue of material fact and that Ms. Chamouille had established all of the elements of trespass and conversion:

> There is no question that he had no right to remain in the property after October 28, 2019 and that he knew it. Even after he was ordered to leave in no uncertain terms, he refused to vacate and would not leave until the sheriff removed him. This is a malicious injury in that it was a wrongful act, done intentionally, which [necessarily] caused injury that was done without just cause or excuse. Defendant claims he did not intend to harm plaintiff and was just "fighting for his right," but a defendant does not need to intend to cause harm to create liability under section 523(a)(6). It is sufficient that he understand that harm is substantially certain to occur. Debtor could not have failed to understand (because it would be blatantly obvious to anyone) that refusing to relinquish possession of real property that belongs to someone else will necessarily result in financial harm to a rightful owner of the property who is trying to obtain possession.

The court similarly held that the $15,000 sanction was nondischargeable, as Mr. Brown had conceded.

At the hearing on the Motion, the bankruptcy court read the tentative ruling into the record. It said that Mr. Brown committed the torts of trespass and conversion. It issued its judgment in favor of Ms. Chamouille and adopted its tentative ruling, the record at the hearing, and the

statements of undisputed facts and conclusions of law.[3] It held that the nondischargeable judgment totaled $446,785.91, consisting of lost rent, legal fees, costs of securing the Property, and sanctions in the Probate Action.[4]

Mr. Brown timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting Ms. Chamouille summary judgment on her § 523(a)(6) claim.

## STANDARD OF REVIEW

We review de novo a bankruptcy court's grant of summary judgment and exception of a debt from discharge under § 523. *See Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

---

[3] In its ruling, the court adopted most of the undisputed facts offered by Ms. Chamouille. It held that Mr. Brown's trespass and conversion were willful and malicious and that damages for defamatory statements are nondischargeable.

[4] The bankruptcy court granted Ms. Chamouille's request for a Civil Rule 54(b) certification so that she could proceed on the § 727(a) claims after the resolution of an appeal from the § 523(a)(6) judgment. No one challenges the finality of the judgment.

DISCUSSION

Under Civil Rule 56(a), made applicable by Rule 7056, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in his favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

Mr. Brown has not established any genuine dispute as to a material fact. As such, Ms. Chamouille was entitled to summary judgment on her § 523(a)(6) claim.[5]

## A. Section 523(a)(6) precludes discharge of a debt for "willful and malicious injury."

Section 523(a)(6) excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The willfulness analysis is separate from the malice analysis, and the two elements must not be conflated. *Carrillo v. Su (In re*

---

[5] Throughout his briefs, Mr. Brown references § 523(a)(2) and argues that Ms. Chamouille did not satisfy the elements of that claim. But Ms. Chamouille never asserted a § 523(a)(2) claim or any nondischargeability claim other than § 523(a)(6). We thus disregard those arguments.

*Su)*, 290 F.3d 1140, 1146 (9th Cir. 2002).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* at 1142; *see Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" (citation omitted)). This analysis requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1145-46. In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)).

Additionally, the wrongful conduct must be tortious under state law. *Lockerby v. Sierra*, 535 F.3d 1038, 1040 (9th Cir. 2008) ("We begin from the proposition that tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6)."). "[C]onduct is not tortious under § 523(a)(6) simply because injury is intended or 'substantially likely to occur,' but rather is only tortious if it constitutes a tort under state law." *Id.* at 1041.

10

**B.     The bankruptcy court did not err in holding that the debt was for willful and malicious injury and was therefore nondischargeable.**

**1.     The bankruptcy court correctly held that Ms. Chamouille had established that Mr. Brown's trespass caused willful and malicious injury.**

The bankruptcy court held that there was no dispute of material fact that Mr. Brown had committed trespass against Ms. Chamouille's Property. It further held that the trespass resulted in a debt for willful and malicious injury. We discern no error.

**a.     The tort of trespass**

First, the bankruptcy court held that Mr. Brown had committed the tort of trespass. The elements of trespass under California law are: "(1) plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) entry onto the property in excess of permission granted; (4) harm; and (5) defendant's act was a substantial factor in causing harm to plaintiff." *Simas v. Powell*, 635 B.R. 366, 373 (N.D. Cal. 2021). "The essence of the cause of action for trespass is an unauthorized entry onto the land of another." *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1778 (1993) (cleaned up).

Ms. Chamouille satisfied the first prong because she had legal ownership of the Property. The Vacate Order and the Ejectment Judgment both determined that Ms. Chamouille owned the Property. Mr. Brown admitted as much in his discovery responses; he affirmatively admitted that "the [Vacate] Order directed that the Jasmine Property be titled in the

11

name of the Plaintiff[,]"and that "the Plaintiff inherited the . . . Property from her sister."[6] There is no genuine dispute of material fact that Ms. Chamouille owned the Property.

For the second and third prongs, Mr. Brown intentionally entered the property "in excess of permission granted to him" when he continued to occupy the Property after the expiration of the temporary statutory license. He admitted in the bankruptcy court that "the [Vacate] Order is binding on [him]" and that he had "no right to live at the Property at any point in time after October 28, 2019."

Mr. Brown argues that he was not required to vacate the Property once the sixty days mandated by CPC § 6500 elapsed. He is wrong. CPC § 6500 states that, "[u]ntil the inventory is filed and for a period of 60 days thereafter, . . . the decedent's surviving spouse . . . [is] entitled to remain in possession of the family dwelling . . . ." The only inference one can draw

---

[6] Mr. Brown argued in the bankruptcy court that only the person in actual, physical possession of the real property may bring an action for trespass. Some California decisions state that, "in a trespass action for real property, the proper plaintiff is the person in possession of the property[,]" which is defined as "actual possession." *Simas*, 635 B.R. at 373-74. Most California decisions, however, state that a person entitled to possession can sue for trespass against one who is wrongfully in possession. *See, e.g.,* *Smith v. Cap Concrete, Inc.*, 133 Cal. App. 3d 769, 774 (1982) ("An action for trespass may technically be maintained only by one whose **right to possession** has been violated . . . ; however, an out-of-possession property owner may recover for an injury to the land by a trespasser which damages the ownership interest." (emphasis added)); *Friendly Vill. Cmty. Ass'n v. Silva & Hill Constr. Co.*, 31 Cal. App. 3d 220, 224 (1973) (holding that "[a]n element of a cause of action for injury to real property is the plaintiff's ownership, lawful possession, or right to possession, of the property").

from this language is that the surviving spouse is **not** entitled to remain in possession of the Property after the sixty-day period. Even if Mr. Brown thought that he could reside on the Property beyond the sixty-day license, "[a] good faith belief that entry has been authorized or permitted provides no excuse for infringement of property rights if consent was not in fact given by the property owner whose rights are at issue." *Cassinos*, 14 Cal. App. 4th at 1780.

Mr. Brown also contends that a trespasser is one who "gains possession of the real estate wrongfully" and that trespass requires an "initial wrongful possession." He is wrong again. Under California law, "[t]respass may be by personal intrusion of the wrongdoer **or by his failure to leave** . . . ." *Martin Marietta Corp. v. Ins. Co. of N. Am.*, 40 Cal. App. 4th 1113, 1132 (1995) (cleaned up) (emphasis added); *see also* Restatement (Second) of Torts § 158 cmt. *l* (1965) ("A trespass on land may be by a failure of the actor to leave the land of which the other is in possession, or a part of such land. If the possessor of the land has consented to the actor's presence on the land, **his failure to leave after the expiration of the license is a trespass** . . . ." (emphasis added)).[7] Thus, although Mr. Brown initially was entitled to reside on the Property, he became a trespasser when he refused to leave after October 28, 2019.

---

[7] We have not found an instance of California state courts relying on this comment. However, California courts often consult the various versions of the Restatement of Torts and have relied on an earlier version of this section concerning trespass. *See Smith v. Lockheed Propulsion Co.*, 247 Cal. App. 2d 774, 784 (1967).

The *Simas* case is instructive as to the first, second, and third prongs. That case also involved a § 523(a)(6) claim based on trespass under California law. The debtor owned a real property "allotment" that he sold to the creditors. 635 B.R. at 371. The creditors later allowed him to temporarily live on the property, but the debtor refused to move out. *Id.* at 372. The debtor filed a chapter 7 petition, and the creditors filed an adversary complaint to determine the nondischargeability of their trespass claims. The bankruptcy court held a trial and determined that the claim was nondischargeable under § 523(a)(6). *Id.*

On appeal, the debtor argued that he did not trespass because the creditors did not own the property as a matter of law and were not in possession of the property. *Id.* at 373. The district court disagreed, holding that the creditors could maintain a cause of action for trespass: they "had control of the Property by way of the parties' [sale] contract, . . . appellant's stay at the Property exceeded his granted permission, and . . . [debtor's] actions caused the [creditors'] harm. Accordingly, . . . appellees had a possessory interest in the Property and could maintain a suit for trespass." *Id.* at 375. It further held that the bankruptcy court correctly ruled that the creditors satisfied the "willful and malicious" standard. *Id.* at 376-78.

Like the debtor in *Simas*, Mr. Brown originally resided on the Property legally. He committed trespass when he refused to vacate the Property as soon as his right to remain on the Property expired. Additionally, it did not matter that the creditors in *Simas* did not have

14

physical possession of the property at the time of the trespass; they "had control and legal possession of the Property[,]" *id.* at 375, just as Ms. Chamouille had legal title and the right to possession of the Property.

As to the fourth and fifth factors, there is no genuine dispute that Mr. Brown caused Ms. Chamouille harm. He wrongfully occupied the Property, which deprived Ms. Chamouille of the rental value of the Property, and he admitted that he did not pay rent or property taxes. These constitute harm, and he was a substantial factor in causing the harm.[8]

Thus, the bankruptcy court did not err in holding that Mr. Brown committed the tort of trespass under California law. In order to establish that Mr. Brown's debt for trespass is nondischargeable, Ms. Chamouille also bore the burden of proving that she suffered a willful and malicious injury.

### b.    Willful

The bankruptcy court did not err in holding that Ms. Chamouille had established Mr. Brown's "subjective motive to inflict injury" or his belief

---

[8] Mr. Brown does not challenge the bankruptcy court's decision that he also committed conversion under California law. Although Mr. Brown has waived the issue, *see Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."), we note that the tort of conversion under California law applies only to personal property, not real property, *see Salma v. Capon*, 161 Cal. App. 4th 1275, 1295 (2008) (Dismissal was appropriate where the plaintiff "alleged that [defendant] converted the . . . house and parcel to his own use. The tort of conversion applies to personal property, not real property."). Even if Mr. Brown had raised the issue, the error was harmless, because the bankruptcy court correctly determined that Mr. Brown had committed trespass.

15

that "injury is substantially certain to result from his own conduct." *See In re Su*, 290 F.3d at 1142. It held that Mr. Brown had to know that his refusal to vacate the Property for nearly three years in the face of multiple court orders, while not paying any rent or property taxes, was causing injury to Ms. Chamouille. We agree. He admittedly knew that he had no right to remain on the Property, and he must have known that his occupancy deprived Ms. Chamouille of the use of the Property.

Mr. Brown argues that there was a triable issue of fact as to his "willfulness" because he believed that he owned the Property. These arguments again have no merit. Mr. Brown admitted in his discovery responses that he "had no right to live at the Property at any point in time after October 28, 2019." He provided no evidence to the bankruptcy court that he believed otherwise. He is bound by his admissions and cannot now create a dispute of material fact.

### c. Malicious

The bankruptcy court correctly found that there was no dispute of material fact as to malice, which requires: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209. Mr. Brown does not explicitly challenge any of these elements on appeal.

Mr. Brown's refusal to vacate the Property at the expiration of the temporary license was both intentional and wrongful. It injured Ms. Chamouille because she could not access or collect rent on the

16

Property, and Mr. Brown did not pay rent or property taxes. He offers no just cause or excuse, other than his supposed subjective belief that he had a right to stay on the Property. But, as discussed above, his own testimony disproves his story: he admitted that he had no right to remain on the Property from October 28, 2019.

We emphasize that this case is unlike the common case in which a tenant holds over after a lease is terminated. Mr. Brown's acrimony towards Ms. Chamouille is glaring: he accused her (baselessly) of killing his wife.

**2. Mr. Brown acknowledges that the $15,000 sanction in the Probate Action is nondishargeable.**

Mr. Brown tersely challenges the bankruptcy court's ruling that the $15,000 he owes Ms. Chamouille pursuant to the Sanctions Order is nondischargeable. We reject his arguments that his conduct was not sanctionable[9] and that Ms. Chamouille was precluded from seeking attorneys' fees after the superior court awarded her sanctions. In fact, he conceded in his declaration attached to the opposition to the Motion that "court ordered sanctions are not discharged by a bankruptcy . . . ." The bankruptcy court did not err in holding that the $15,000 sanction was

---

[9] Mr. Brown argues that the Sanctions Order was wrongly decided because his "homicide" statements were "protected by the litigation privilege and secondly because this statement is not defamatory." He asks us to set aside the ruling and remand to the superior court. We have no power to reverse a ruling by the superior court, and, even if we could do so, Mr. Brown offers no viable reason why we should.

nondischargeable.

**C.     The bankruptcy court did not err in determining the amount of the nondischargeable debt.**

Mr. Brown challenges the amount of the nondischargeability award. None of his arguments have merit.

First, Mr. Brown argues that attorneys' fees that Ms. Chamouille incurred while he was defending himself should be dischargeable. He is wrong. The U.S. Supreme Court has stated that the discharge exception under § 523(a)(2)(A) applies to all liability resulting from a debtor's fraudulent conduct, including "attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998). We have extended this rule to nondischargeability claims under § 523(a)(6) as well. *See Bertola v. N. Wis. Produce Co. (In re Bertola)*, 317 B.R. 95, 100 (9th Cir. BAP 2004) ("*Cohen* held that a bankruptcy court could determine the 'debt' in a proceeding under § 523(a)(2)(A) to include attorneys' fees and costs. . . . The same should be true in cases under § 523(a)(6)."). Therefore, the attorneys' fees that Ms. Chamouille incurred due to Mr. Brown's trespass are also a nondischargeable debt.

Additionally, under California Civil Code ("CCC") § 3334(a), "[t]he detriment caused by the wrongful occupation of real property . . . is deemed to include . . . the costs, if any, of recovering the possession." Thus, Ms. Chamouille's attorneys' fees are part of the damages to which she is entitled under California law.

18

Second, Mr. Brown argues that Ms. Chamouille should be precluded from seeking attorneys' fees in the bankruptcy case, because she already had an opportunity to seek attorneys' fees against him when asking for sanctions in the superior court. He appears to rely on issue preclusion, although he does not explain how issue preclusion could apply.

Mr. Brown admits that this argument is "only brought up here on appeal for the first time." We do not consider arguments raised for the first time on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009).[10]

Even if we were to consider this argument, Mr. Brown is wrong. Among other requirements, issue preclusion under California law applies only if "the issue sought to be precluded from relitigation is identical to that decided in a former proceeding . . . ." *Plyam v. Precision Dev., Inc. (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015).

Although the Sanctions Order provides that Mr. Brown "caus[ed] the Administrator to incur unnecessary attorneys' fees," there is no indication that the state court decided the amount of those attorneys' fees. Rather, the state court issued a monetary sanction in a round amount to punish Mr. Brown for saying that Ms. Chamouille murdered her sister and filing meritless motions.

Third, Mr. Brown argues that he did not need to leave the Property

---

[10] Mr. Brown argues that we should consider this new issue because it involves only questions of law. But the evaluation of issue preclusion involves a factual inquiry (for which Mr. Brown had provided none of the evidence, including state court filings).

until the Vacate Order on March 26, 2020, and that Ms. Chamouille was only entitled to damages accruing after that date. But as we have explained, Mr. Brown's occupancy on the Property was wrongful as soon as the statutory license expired on October 28, 2019. The bankruptcy court correctly held that Ms. Chamouille's damages started accruing on that date.

Finally, Mr. Brown argues that he does not have to pay for lost rent, because his failure to pay rent is merely a breach of contract. This is wrong. There was no contract between Mr. Brown and Ms. Chamouille. Mr. Brown committed trespass, not breach of contract. The court did not err in determining that the "value of the use of the property for the time of that wrongful occupation," CCC § 3334(a), is properly included in Mr. Brown's nondischargeable debt.

## CONCLUSION

The bankruptcy court did not err in granting Ms. Chamouille summary judgment on her § 523(a)(6) claim. We AFFIRM.